RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 2/26/13
JDB

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **MICHAEL DOBBINS #105032** | DOCKET NO. 1:12-CV-3046; SEC. P |
| **VERSUS** | JUDGE TRIMBLE |
| **TIM KEITH, ET AL.** | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

Pro se Plaintiff, Michael Dobbins, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC), and he is incarcerated at the Winn Correctional Center (WNC) in Winnfield, Louisiana. He complains that he was denied adequate medical care. He names as defendants Warden Tim Keith, Nicole Walker, James Leblanc, Pat Thomas, Dr. Kuplesky, Nurse Kathy Richardson, Nurse Thistle, Nurse Mary Fobb, and Nurse Ms. Gaskill.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### *Factual Allegations*

Plaintiff alleges that, on unspecified dates prior to October 22, 2011, he submitted several sick call forms complaining about dizzy spells and migraine headaches. [Doc. #1-1, p.3] Then, on October 22, 2011, "while attending a program on the big yard, Plaintiff had acute pain in his head and passed out." [Doc. #1-1, p.3] Plaintiff was transported by wheelchair to the infirmary.

Nurse Thistle examined Plaintiff and provided him with Motrin before sending him back to the housing unit. [Doc. #1-1, p.3]

On December 5, 2011, Plaintiff requested medical care for weakness, dizziness, headaches, and black outs. [Doc. #1-1, p.4] Plaintiff states that he was seen by the medical staff, but not examined. He alleges that his blood pressure medication was discontinued that day. He alleges that he was taking up to ten Tylenol per day for head pain. [Doc. #1-1, p.4]

Plaintiff next sought medical care on January 31, 2012, when he made a "medical emergency" and was seen by Nurse Gaskill. Gaskill diagnosed Plaintiff's condition as "sinus" and dehydration and released him. [Doc. #1-1, p.4] Later that day, a guard saw Plaintiff and ordered him to go back to the emergency area to be evaluated by a doctor. Dr. Kuplesky examined Plaintiff and diagnosed inner ear infection, due to Plaintiff's vertigo. [Doc. #1-1, p.4] The doctor prescribed Antivert.

Plaintiff was seen by Nurse Fobb on February 2, 2012, due to headaches, blackouts, and pain in the eyes. [Doc. #1-1, p.4] She gave Plaintiff Antivert and sent him back to the general population. Plaintiff went to the dining hall and told Warden Stevenson of his medical issues. The warden told Unit Manager Booker to keep an eye on Plaintiff to see if his condition worsened. [Doc. #1-1, p.5] Booker sent Plaintiff back to the infirmary. Plaintiff was examined by Nurse Practitioner Kathy

2

Richardson. She checked Plaintiff's eyes, ears, and throat, gave him a Percogesic pill, and released Plaintiff. [Doc. #1-1, p.5]

On February 6, 2012, Plaintiff made another medical emergency because he was experiencing "extreme pain". [Doc. #1-1, p.5] He states that Nurse Practitioner Richardson examined him and diagnosed the issue as "Disc-C-Spine". [Doc. #1-1, [p.5] She gave Plaintiff a Percogesic pill and released him.

On February 13, 2012, Plaintiff notified Unit Manager Booker that he was experiencing extreme dizziness. As Booker was calling the medical department, Plaintiff passed out. Plaintiff was transferred to the Winn Parish Medical Center by ambulance. [Doc. #1-1, p.5] The doctor at Winn Medical diagnosed Plaintiff's condition as a subdural hematoma. Plaintiff was transferred to LSU Medical Center for treatment. [Doc. #1-1, p.6] The doctors at LSU performed surgery to stabilize the hematoma.

### Law and Analysis

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. Plaintiff complains that he was deprived of adequate medical care because his subdural hematoma was not diagnosed by the staff at WNC.

In <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for

damages under 42 U.S.C. §1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

The plaintiff must allege deliberate indifference by stating facts that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a **wanton disregard** for any serious medical needs. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). In this case, Plaintiff alleges that each time he requested care, he was treated. The defendants did not ignore his complaints or refuse to treat him. On October 22, 2011, he was transported by wheelchair to the infirmary, where he was treated by Nurse Thistle. He sought no further care until December 5, 2011, when he was treated for weakness, dizziness, headaches, and black outs. Plaintiff made no complaints for another month and a half, until January 31, 2012, when he made a "medical emergency" and was seen by Nurse Gaskill. Gaskill diagnosed Plaintiff's condition as "sinus" and dehydration and released him. [Doc. #1-1, p.4] Later that day, Dr. Kuplesky examined Plaintiff and diagnosed inner ear infection, due to Plaintiff's vertigo. [Doc. #1-1, p.4]

4

The doctor prescribed Antivert. Plaintiff was seen by Nurse Fobb on February 2, 2012; she gave Plaintiff more Antivert and Nurse Practitioner Kathy Richardson gave him Percogesic. [Doc. #1-1, p.5] On February 6, 2012, Nurse Practitioner Richardson examined Plaintiff, diagnosed the issue as "Disc-C-Spine" [Doc. #1-1, p.5], and gave Plaintiff Percogesic. On February 13, 2012, Plaintiff was transferred to the Winn Parish Medical Center by ambulance. [Doc. #1-1, p.5]

The facts alleged by Plaintiff are not indicative of an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind. There is no indication that the defendants intended or desired for Plaintiff to suffer harm. In addition to the medical care he received, the warden specifically asked the Unit Head to keep an eye on Plaintiff. When the Unit Head thought Plaintiff's condition was worsening, she immediately sent Plaintiff to the infirmary.

Even if Kathy Richardson and Dr. Kuplesky were negligent in failing to make the correct diagnosis, this does not state a claim of deliberate indifference. *Negligence, neglect, or medical malpractice do not* constitute deliberate indifference. See Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Even "gross negligence" does not establish deliberate indifference. Hernandez v. Tex. Dep't of Prot. and Reg. Servs., 380 F.3d 872, 882 (5th Cir. 2004). Therefore Plaintiff fails to state a claim against Kuplesky

and Richardson. As for Thistle, Fobb, and Gaskill, Plaintiff specifically claims that these nurses were negligent and/or committed malpractice. As stated above, the actions of the nurses that Plaintiff describes falls far short of wanton disregard for Plaintiff's needs.

Plaintiff claims that DOC Secretary James LeBLanc, Warden Keith, and Assistant Warden Walker are liable because they failed to properly investigate the inadequacies in the medical department. He also claims that Pat Thomas is liable for not "taking action" after she learned of the inadequacy of the medical department from Plaintiff. [Doc. #1-1, p.6] Plaintiff's summation that the medical department and its staff is *inadequate* is a conclusory allegation. Conclusory allegations lacking reference to material fact are not sufficient to support claims under Section 1983. Al-Rai'id v. Ingle, 69 F .3d 28 (5th Cir. 1995). Moreover any right a plaintiff has to an investigation of his grievances or complaints is founded in state law or regulation, not in the federal constitution's due process guarantee. Sandin v. Conner, 515 U.S. 472 (1995).

### *Conclusion*

Plaintiff received medical treatment on numerous occasions. He was not ignored or treated with deliberate indifference. He has alleged negligence, which does not state a claim under Section 1983. For the forgoing reasons, **IT IS RECOMMENDED** that Plaintiff's

complaint be **DENIED AND DISMISSED with prejudice** for failing to state a claim for which relief can be granted pursuant to 28 U.S.C. §1915(e)(2)(b) and 1915A.

*Objections*

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.**

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 26th day of February, 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE